1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHIRLEY LARSON,                             No.  2:12-cv-2100 AC

12                  Plaintiff,

13          v.                                   ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for a period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act ("the Act"), and Supplemental Security

21   Income ("SSI") under Title XVI of the Act.  The parties' cross-motions for summary judgment

22   are pending.  For the reasons discussed below, the court will grant defendant's motion for

23   summary judgment and will deny plaintiff's motion for summary judgment.

24                            PROCEDURAL BACKGROUND

25          Plaintiff filed an application for DIB and SSI on July 9, 2009, alleging disability

26   beginning on April 15, 2009.  Administrative Record ("AR") 66-40, 284-87.  Both applications

27   were denied initially and again upon reconsideration.  AR 45-54, 290-93, 295-300.  On

28   September 6, 2011, a hearing was held before administrative law judge ("ALJ") Mark Ramsey.

1

AR 304-33.  Plaintiff appeared with attorney representation at the hearing, at which only she

testified.  See id.  In a decision dated October 28, 2011, the ALJ determined that plaintiff was not

disabled under sections 216(i), 223(d) of the Act as to her DIB claim and not disabled under

section 1614(a)(3)(A) of the Act as to her SSI claim.[1]  AR 10-19.  The ALJ made the following

findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social
> Security Act through March 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity
> since April 15, 2009, the alleged onset date.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 et seq.  This requires determination of whether the
insured status requirements of sections 216(i) and 223 of the Social Security Act are met.
Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et
seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful
activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§
423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for
benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76;
Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential
evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:   Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?   If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If
> so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity
> perform any other work?  If so, the claimant is not disabled.  If not,
> the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

3. The claimant has the following severe impairments: posttraumatic stress disorder (PTSD), bipolar disorder, and substance abuse in early remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple repetitive tasks without frequent public or co-worker contact.

6. The claimant is unable to perform past relevant work.

7. The claimant was born on February 9, 1972 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2009, through the date of this decision.

AR 21-29.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on July 9, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 2-4.

## FACTUAL BACKGROUND

Born on February 9, 1972, plaintiff was 36 years old on the alleged onset date of disability and 38 years old at the time of the administrative hearing. AR 306. Plaintiff dropped out of high school in the eleventh grade, but obtained her GED in 2006. AR 308. She last worked as a cashier at a chain convenience store from 2008 to 2009. AR 310-11. She was fired from that job

3

1  because her ex-boyfriend appeared at work and caused a scene.  See AR 158.  At the time of the

2  hearing, plaintiff was living in the backyard of her mother's house in a tent.  AR 307.  Plaintiff

3  alleges disability beginning on April 15, 2009.

4                                              LEGAL STANDARDS

5          The Commissioner's decision that a claimant is not disabled will be upheld if the findings

6  of fact are supported by substantial evidence in the record and the proper legal standards were

7  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

8  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

9  180 F.3d 1094, 1097 (9th Cir. 1999).

10         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

11  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

12  more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

13  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

14  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

15  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

16  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

17  Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

18         Although this Court cannot substitute its discretion for that of the Commissioner, the

19  Court nonetheless must review the record as a whole, "weighing both the evidence that supports

20  and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of

21  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d

22  993, 995 (9th Cir.1985).

23         "The ALJ is responsible for determining credibility, resolving conflicts in medical

24  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

25  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

26  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

27  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons

28  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

1   rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d

2   871, 874 (9th Cir. 2003).

3       The court will not reverse the Commissioner's decision if it is based on harmless error,

4   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

5   ultimate nondisability determination.'"   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

6   Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

7   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

8   ANALYSIS

9       Plaintiff seeks summary judgment on the ground that substantial evidence does not

10   support the ALJ's decision.   The Commissioner, in turn, argues that the ALJ's decision is

11   properly supported by substantial evidence and free from legal error.

12   A.    The ALJ's Decision

13       In the October 28, 2011 decision, the ALJ assessed the following residual functional

14   capacity for plaintiff: she can perform a full range of work at all exertional levels but with the

15   following nonexertional limitations: simple repetitive tasks without frequent public or co-worker

16   contact.   In so concluding, the ALJ relied on the medical record and plaintiff's complaints and

17   testimony.

18       As to the medical record, the ALJ proceeded temporally and concluded that there exists

19   minimal evidence for depression and anxiety.   The first record referencing mental impairments is

20   dated June 16, 2009 and is from a women's refuge that plaintiff entered following threats from

21   her ex-boyfriend.   Because of the paucity of records at the time that plaintiff filed her applications

22   for benefits, the Social Security Administration arranged for a psychiatric consultative

23   examination.   This examination occurred on September 9, 2009 and was conducted by Dr.

24   Ornella Addonizio.   AR 268-70.   At the examination, plaintiff's chief complaint was PTSD.   She

25   told Dr. Addonizio of the loss of her 9-month old baby to SIDS when she was 16 years old, the

26   loss of her baby's father to suicide shortly after the baby's death, the abuse that she witnessed

27   towards her mother at the hands of plaintiff's stepfather, and the abuse she experienced at the

28   hands of her ex-boyfriend.   Plaintiff said she rarely leaves the house, but when she does, her

5

1   mother accompanies her.  Plaintiff reported that she stopped drinking five months prior and

2   stopped doing drugs "last year."

3          During the mental status examination, Dr. Addonizio noted that plaintiff was anxious,

4   fidgety, and could not tolerate the door closed in the office during the evaluation.  Plaintiff denied

5   suicidal and homicidal ideations and hallucinations.  She had difficulty completing serials of

6   seven and three when calculating, could not spell "world" backwards, and miscalculated a

7   currency calculation.  Dr. Addonizio ultimately determined that plaintiff suffers from PTSD.  The

8   doctor's impression is reproduced here:

9              [Plaintiff] presents a long history of exposure to domestic violence
              as well as being a victim of abuse.  She needs further psychiatric
10             evaluation and treatment to stabilize her symptoms which has
              affected her daily activities by being secluded in her own home due
11             to constant fear.  This can also affect her capacity to relate to co-
              workers, difficulty concentrating, and the public in general.  Her
12             attendance will be affected as well.  She has difficulty concentrating
              which will affect her capacity to understand, carry out, and
13             remember simple instructions.  She cannot manage her own funds.

14   AR 270.

15          The ALJ gave Dr. Addonizio's opinion limited weight insofar as the doctor determined

16   that plaintiff's work attendance and her ability to concentrate on even simple tasks are affected.

17   AR 17.  The ALJ's decision was based on the absence of any psychiatric treatment prior to June

18   2009 and on the fact that plaintiff had only recently been free of drug use.

19          The ALJ then reviewed the remainder of the medical record, citing specifically to the

20   following: (a) a January 2010 medical note from Shasta Community Health Center ("SCHC"),

21   which indicated that plaintiff was experiencing "some severe anxiety . . . because she left another

22   abusive relationship," AR 232, (b) a May 11, 2010 medical note regarding plaintiff's anxiety and

23   suicidal ideations after missing two days of medication, AR 181, (c) an August 2010 10-day

24   hospitalization in Colorado following a suicide attempt, AR 157, 179, (d) plaintiff's September 9,

25   2010 admission that during the time of the suicide attempt, she was using methamphetamine and

26   drinking alcohol, AR 179, (e) an October 27, 2010 medical note from SCHC noting depression

27   and suicidal thoughts at times, but a decrease in anxiety as a result of medication, AR 164, and (f)

28   a February 7, 2011 note from a treating nurse indicating that plaintiff suffered a "severe panic

6

attack" in the examination room, but then diagnosing her only with "depression with anxiety" (and not an anxiety disorder), AR 155.

He also discussed a January 12, 2011 psychiatric evaluation at SCHC by nurse practitioner, Barbara McGlynn, on referral from "PCC." See AR 157-61. Ms. McGlynn first discussed plaintiff's subjective complaints and history, including her history of depression and anxiety, which plaintiff claimed existed her "whole life"; plaintiff's hospitalization in Colorado in 2010 where she was diagnosed with bipolar disorder; and plaintiff's psychiatric medications. Plaintiff rated her depression as 8/10, calling it "the worst depression for quite some time." She claimed to have not experienced any improvement with current medications, except that Prozac mildly improved her irritability; claimed suicidal ideations; and denied hallucinations, though she claimed that she occasionally hears vague muffled voices. She reported feeling anxious "all the time" with panic attacks every day, rendering her agoraphobic.

Ms. McGlynn conducted a mental status examination, finding plaintiff to be alert and well-groomed with normal recent and remote memory. Ms. McGlynn noted plaintiff's affect to be anxious and depressed with passive thought content and poor frustration tolerance. Plaintiff's judgment was noted to fluctuate between fair and poor.

On review of this opinion, the ALJ noted that Ms. McGlynn's "objective findings were all within normal limits with the exception of an anxious and depressed affect, endorsement of passive suicidal ideation and poor frustration tolerance." AR 16. Despite what the ALJ deemed to be "mild findings," plaintiff was diagnosed with PTSD and bipolar affective disorder, depressed, severe, with a GAF of 55. AR 160.

The ALJ next considered the opinions of the State Agency consultants, including the October 7, 2009 opinion of Dr. E. Harrison and the March 25, 2010 opinion of Dr. Uwe Jacobs. The first State Agency consultant, Dr. Harrison, determined that plaintiff suffers from anxiety-related disorders and substance addiction disorders. In his review of the medical record, the doctor observed an inconsistency regarding plaintiff's drug use. Specifically, in a June 2009 medical note, plaintiff was noted to be clean of drugs for a few weeks, but in Dr. Addonizio's notes, plaintiff indicated she had been free of drugs since last year. Based on plaintiff's history of

1   drug use and following further review of the minimal treatment record, Dr. Harrison opined that

2   plaintiff should improve within 12 months if she ceased using drugs.   He noted that Dr.

3   Addonizio's opinion is not supported by a significant longitudinal history of treatment and was

4   based on incorrect information regarding plaintiff's drug use.   The ALJ gave great weight to this

5   opinion.

6         The second State Agency consultant, Dr. Jacobs, determined that plaintiff suffers from

7   chronic anxiety and from a substance addiction disorder and that she has inflexible and

8   maladaptive personality traits that cause either significant impairment in social or occupational

9   functioning or subjective distress.   AR 206-23.   He noted plaintiff to have mild restrictions in

10   activities of daily living and moderate restrictions in maintaining social functioning and

11   maintaining concentration, persistence or pace.   He opined that plaintiff can understand,

12   remember and carry out simple and some detailed but not complex instructions; can sustain

13   concentration, persistence, and pace for simple tasks only; can get along with others but not work

14   effectively with the public; and can adapt to the stress and changes of a simple work environment.

15         The ALJ gave great weight to this opinion as consistent with the record as a whole, but

16   gave limited weight to the portion of the opinion that limited plaintiff's contact with the public.

17   In giving that portion of the opinion limited weight, the ALJ noted that although plaintiff "has

18   social limitations, which would limit her contact with others, the record supports that she can deal

19   with people on a limited basis and that it is not completely prohibited."   AR 17.

20         As to plaintiff's complaints and testimony, the ALJ found her to be not fully credible

21   based on the following: (1) although plaintiff claims that she does not like to socialize, the record

22   shows that she is able to do so, (2) the record shows that her symptoms worsen when she is not

23   compliant with her medication, (3) she has a history of substance abuse and does not attend AA

24   or NA meetings, (4) while she claims that she does not drink to excess, the records show that she

25   was arrested for DUI in July 2011 and was hospitalized in Colorado in August 2010 during a time

26   when she admitted she was using methamphetamine and drinking alcohol, (5) regarding her

27   activities of daily living, there was a large inconsistency between what she claimed she could do

28   at the hearing and what she and her mom claimed she could do in written reports submitted in

1   support of plaintiff's applications.

2          The ALJ then determined that, while plaintiff cannot perform any past relevant work,

3   there are jobs in significant numbers in the national economy that the claimant can perform.  The

4   court has reviewed this decision and finds it to be supported by substantial evidence.

5   B.     Plaintiff's Motion for Summary Judgment

6          Plaintiff contends the ALJ made numerous errors in rendering his decision.  The court will

7   address each argument in turn.

8          1.     Credibility Determination

9          Plaintiff challenges the ALJ's credibility determination, arguing that the ALJ's reasons for

10  rejecting plaintiff's statements regarding her daily activities are insufficient.  In his decision, the

11  ALJ provided the following reasons for finding plaintiff not fully credible with respect to her

12  daily activities:

13              In her daily activities questionnaire, as well as the third party
                questionnaire, completed by her mother, both show more activities
14              than she admitted to at the hearing.  At the hearing [she] said she
                does not cook, her mother's [sic] does all the shopping and that
15              [she] did not do laundry or household chores.    Yet, both
                questionnaires show that she fixes light meals, does laundry and
16              household chores.    While the claimant has described daily
                activities, which are fairly, limited, two factors weigh against
17              consider[ing] these allegations to be strong evidence in favor of
                finding the claimant disabled.    First, allegedly limited daily
18              activities cannot be objectively verified with any reasonable degree
                of certainty.  Secondly even if the claimant's daily activities are
19              truly as limited as alleged, it is difficult to attribute that degree of
                limitation to the claimant's medical condition, as opposed to other
20              reasons, in view of the relatively weak medical evidence [and] other
                factors discussed in this decision.  Overall, the claimant's reported
21              limited daily activities are considered to be outweighed by the other
                factors discussed in this decision.
22

23  AR 17.

24         This explanation is not a sufficient basis for the ALJ's credibility finding.  The above

25  justification for the ALJ's credibility finding has been used in almost identical form by other

26  ALJs and rejected.  In McKin v. Astrue, 2012 WL 5250096, *4-*5 (W.D. Wash. Sept. 4, 2012)

27  for example, the ALJ failed to credit plaintiff's testimony and stated:

28

9

1
2
3
4
5
6
7

> While the claimant has alleged daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of the finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors herein discussed. Consequently, the extreme symptoms alleged by the claimant are simply not supported by the record.

8  In concluding that the ALJ failed to provide clear and convincing reasons for his rejection of

9  plaintiff's testimony, that court noted that "simply because a fact cannot be verified objectively

10  provides little evidence to support the conclusion that the individual is not being truthful about

11  such fact in any particular instance." Id. at *4.  The court also noted that the ALJ's second reason

12  failed because the ALJ did "not specify what other reasons to which one can attribute the degree

13  of limitation plaintiff allege[d] that she suffer[ed]" and that "[a]ttributing the degree of limitation

14  plaintiff alleges to other reasons, when those "other reasons" are not specified, provides no

15  support for the ALJ's adverse credibility finding."  Id. at 5.

16  The McKim court went on to state that the Ninth Circuit has specified "the two grounds

17  for using daily activities to form the basis of an adverse credibility determination: (1) whether or

18  not they contradict the claimant's other testimony and (2) whether or not the activities of daily

19  living meet "the threshold for transferable work skills."  Id. at 5. (citing Orn v. Astrue, 495 F.3d

20  625, 639 (9th Cir. 2007)).  Here, and unlike the ALJ in McKim, the ALJ also found a "specific

21  contradiction between plaintiff's other testimony and her activities of daily living."  He noted that

22  plaintiff's statements on her Adult Function Report and plaintiff's mother's statements in the third

23  party-statement directly contradicted plaintiff's hearing testimony regarding her ability to perform

24  daily activities.  This was a sufficient basis to find plaintiff not fully credible.  Orn, 495 at 639;

25  see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

26  2.  Opinion Evidence

27  Next, plaintiff argues that the ALJ erred in giving little weight to the opinion of the

28  examining psychiatrist, Dr. Addonizio, and great weight to the opinion of the State Agency

1    consultants.

2           The weight given to medical opinions depends in part on whether they are proffered by

3    treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31

4    (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who

5    has a greater opportunity to know and observe the patient as an individual, than the opinion of a

6    non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans

7    v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-

8    examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

9           To evaluate whether the Commissioner properly rejected a medical opinion, the court

10   considers not only the source of the opinion but also: (1) whether contradictory opinions are in

11   the record; and (2) whether clinical findings support the opinions.  The Commissioner may reject

12   an uncontradicted opinion of a treating or examining medical professional only for "clear and

13   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15   by an examining professional's opinion which is supported by different independent clinical

16   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

18   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

19   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

20   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

21   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

22   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

23   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

24   without other evidence, is insufficient to reject the opinion of a treating or examining

25   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

26   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

27   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

28   also Magallanes, 881 F.2d at 751.

a. <u>State Agency Consultants</u>

Turning first to the State Agency consultants, plaintiff argues that the ALJ erred in selectively removing Dr. Jacob's limitation precluding public contact without providing a basis for this exclusion. The ALJ rejected this portion of the consultant's opinion as being unsupported by the record. The ALJ wrote, "[w]hile the claimant has social limitations, which would limit her contact with others, the record supports that she can deal with people on a limited basis and that it is not completely prohibited." AR 17. Previously, the ALJ noted that, while plaintiff does not like to socialize, "she gets along with her mother, has some friends and boyfriends. Even if the claimant does not like to socialize, the record shows that she is able to do so." AR 16. The record supports this conclusion. <u>See</u> AR 97 (plaintiff's Adult Function Report noting that she talked on the phone or in-person with others once or twice a week), AR 105 (third party statement noting that plaintiff receives visitors one time per week), AR 306 (plaintiff's testimony that she lived with friends before moving home); AR 317-18 (plaintiff's testimony regarding having male and female friends); AR 328 (plaintiff's testimony regarding visiting family in Colorado); AR 329 (plaintiff's testimony regarding a boyfriend). <u>See</u> <u>Morgan</u>, 169 F.3d at 601-02 (upholding the ALJ's rejection of a physician's opinion that was inconsistent with the claimant's activities of daily living, which suggested that the claimant's mental impairments did not prevent him from working). Accordingly, the court finds that the ALJ provided specific and legitimate and clear and convincing reasons for rejecting this portion of the consultant's opinion.

Plaintiff also argues that the State Agency consultants "provided many more limitations as well that singularly and in combination would result in a finding of 'disabled' under SSR 85-15 which the ALJ utterly fails to address," but plaintiff does not identify what these other limitations are or how they would support a disability finding. <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001) (the burden of proof rests with the plaintiff in the first four steps to show that he or she is disabled).

b. <u>Dr. Addonizio</u>

Plaintiff also argues that the ALJ erred in giving little weight to the portion of Dr. Addonizio's September 2009 opinion determining that plaintiff's work attendance and her ability

1    to concentrate on even simple tasks are affected by her mental impairments.  AR 17.  In giving

2    little weight to this opinion, the ALJ relied on Dr. Harrison's opinion, which discounted these

3    findings because there was an absence of any psychiatric treatment prior to June 2009 and

4    because plaintiff had only recently been free of drug use.  Plaintiff counters that she had been free

5    of drugs for "significantly longer than a few weeks but for one single relapse."  But as discussed

6    more fully below, the record evidences more than a single relapse following the submission of her

7    applications for benefits.  Regardless, at the time of Dr. Addonizio's opinion, medical notes

8    indicate that plaintiff had been free from drugs for only a few weeks.  See AR 273.  Furthermore,

9    at the time that Dr. Addonizio issued his opinion, there were indeed very few treatment records,

10   dating back only three months prior to his evaluation of plaintiff.  Both of these reasons are

11   sufficiently specific and legitimate to reject Dr. Addonizio's opinion regarding plaintiff's work

12   attendance and her ability to concentrate on even simple tasks.  Meanel, 172 F.3d at 1113

13   (treating physician's conclusory, minimally supported opinion rejected).

14          3.   Other Arguments

15          Plaintiff also presents a number of other arguments in her motion for summary judgment.

16   For example, she argues that the ALJ erroneously asserted that there is little medical evidence in

17   this case.  But the ALJ did not state that there is little evidence in this case in general.  Rather, as

18   he was proceeding through the medical record in a temporal fashion, he noted that in July 2009, at

19   the time when plaintiff filed her applications for benefits, the treatment records were minimal

20   and, accordingly, the Social Security Administration arranged for plaintiff to be examined by Dr.

21   Addonizio.  See AR 15.  The ALJ then discussed at length the treatment records that followed Dr.

22   Addonizio's examination and that were dated from September 10, 2009 through July 15, 2011.

23   The ALJ did not err.

24          Plaintiff also argues that the ALJ improperly painted her as a drug addict.  She argues that,

25   to the contrary, she was forthcoming about her substance abuse, her single relapse, and her

26   abstinence.  While plaintiff asserts that she had been clean for years but for a single relapse, the

27   court sees no error in the ALJ's reference to the medical record documenting plaintiff's

28   "occasional use of substances," such as plaintiff's earliest treatment records, which came only a

1  few weeks after plaintiff stopped using methamphetamine and heroin, <u>see</u> AR 273; plaintiff's 10-

2  day hospitalization in Colorado in August 2010, which coincided with plaintiff's

3  methamphetamine and alcohol abuse, AR 179; and plaintiff's July 2011 arrest for DUI, <u>see</u> AR

4  145.

5          Next, plaintiff claims that she does in fact attend NA meetings despite the ALJ's assertion

6  that plaintiff "has not sought treatment in the form of AA or NA or other counseling."  But the

7  only reference in the record to NA meetings comes from a third party statement, in which

8  plaintiff's mother noted that plaintiff attends these meetings on a regular basis.  AR 105.  In her

9  own Adult Function Report, plaintiff wrote that she does not go anywhere on a regular basis and

10  made no mention of NA meetings either there or at the hearing before the ALJ.  Assuming

11  arguendo that the ALJ erred in failing to credit the third party statement with respect to plaintiff's

12  attendance at NA meetings, the court finds any such error to be harmless because it is

13  inconsequential to the ultimate decision.  See <u>Batson v. Comm'r of Social Security</u>, 359 F.3d

14  1190, 1197 (9th Cir. 2004).

15          Plaintiff also claims that the ALJ erred in noting that plaintiff is at times not "fully

16  compliant with her treatment."  <u>See</u> AR 16.  As to this, the ALJ noted only that the record

17  evidences that plaintiff's symptoms are exacerbated when she is out of medication.  The record

18  supports this statement.  <u>See</u>, <u>e.g.</u>, AR 181, 186.  <u>Smolen</u>, 80 F.3d at 1284 (ALJ may consider a

19  claimant's compliance with her prescribed treatment in assessing the severity of a claimant's

20  symptoms).

21                                        CONCLUSION

22          Because the court finds no error in the ALJ's analysis, IT IS HEREBY ORDERED that:

23          1.  Plaintiff's motion for summary judgment is denied;

24          2.  The Commissioner's cross-motion for summary judgment is granted; and

25          3.  The Clerk is directed to enter judgment in defendant's favor.

26  DATED: December 26, 2013

27                                        _____
                                          ALLISON CLAIRE
28                                        UNITED STATES MAGISTRATE JUDGE